EASTERN DISTRICT, PHILADELPHIA, 1860.

## Bancroft *versus* Ashhurst et al.

1. A power of sale, given to trustees in a deed of trust, in the nature of a mortgage, is as irrevocable as an ordinary power, coupled with an interest, and the mortgagor cannot prevent the exercise of the authority by subsequent grants, nor can his creditors be allowed to defeat it by subsequent judgments.

2. A purchaser at a sale, under a power in a deed of trust, takes a title divested of all incumbrances.

IN EQUITY.—In the Supreme Court, *coram* Mr. Justice THOMPSON, sitting at *Nisi Prius.*

This was a bill filed by Stacy B. Bancroft against John Ashhurst, Edwin M. Lewis, and the Montour Iron Company, a corporation created prior to January 1, 1855, in pursuance of the Act of Assembly, by the Court of Common Pleas of *Montour county*, setting forth, that at a meeting of the stockholders of the said The Montour Iron Company, on the 26th day of September, 1855, resolutions were adopted, by which it was provided, that the bonds of the said company, with coupons attached, to an amount not to exceed $600,000, should be issued in the form in the said resolutions mentioned, and that to secure the repayment thereof, there should be executed and delivered to Isaac R. Davis, John Ashhurst, and Edwin M. Lewis, as trustees, a mortgage upon all the property of the said, The Montour Iron Company, and that the said mortgage should contain a provision, for the creation of a sinking fund, and that the said trustees should have the right to re-enter, or sell at public sale, or by judicial sale, the said premises, upon demand of any one or more of the holders of the bonds secured by said mortgage, if default for thirty days, after thirty days' notice, should be made in the payment of the interest, or of the sinking fund, thereinafter mentioned, and that the said mortgage should contain such other covenants, as might be customary or deemed advisable. The resolutions also provided for a sinking fund of $28,000 per annum, to be created out of profits of the company, and before the declaration, or payment of any dividend to the stockholders whatsoever, therefrom, and of the said sum of $28,000, one-half should be paid to the trustees named in said mortgage, on the first days of April and October, in each year, and the same, with interest accruing, should be invested by them in the purchase of bonds issued under said mortgage, or in loans of the State of Pennsylvania, and the same, with the accumulation, should be held in trust for the holders of said bonds, to

[Bancroft *v.* Ashhurst et al.]

secure their payment. The bonds were executed to the amount of $600,000, payable July 1, 1869, and on the 28th of September, 1855, the mortgage contemplated by the resolutions, was executed and delivered to Messrs. Davis, Ashhurst, and Lewis, and to the survivors and survivor of them, and the heirs, executors, administrators, and assigns of such survivor, conveying the whole of the real estate, machinery, and fixtures, belonging to the Montour Iron Company, whatsoever, and wheresoever the same might be, in trust, to secure the payment of the said bonds, subject to the conditions and provisions in the said mortgage contained. Isaac R. Davis died February 4, 1857, and there is no acting trustee in his place. The bill alleges covenants in the mortgage, that if the company neglected, refused, or omitted to make the semi-annual payments for the sinking fund, or to make the semi-annual interest payments, or should neglect to pay the principal bonds when they became due, that then, immediately upon any such refusal, neglect, or omission, for the space of thirty days, it should, and might be lawful for the trustees, for the time being, upon the demand in writing, of any person or persons, body politic or corporate, holding the said bonds, to an amount not less than $10,000, to give notice to the said, The Montour Iron Company, that they had broken the covenants in the said indenture of mortgage contained, and that, according to its terms, the whole of the debt or debts, due upon the said bonds, principal and interest, should and would, after thirty days, be taken and considered to have fallen and become due and payable one year before the date of such notice, (and that the said notice should be served, either by leaving the same at any office of the Montour Iron Company, or by delivering it to the president, or the secretary, or to any or either of the managers thereof,) then, at the expiration of the further term of thirty days, from the time of delivery of such notice, unless the said The Montour Iron Company, should, within said period, make the payments, or fulfil and perform the covenants and conditions therein mentioned, which might have theretofore been omitted or broken, then, and immediately after the expiration of the said second period of thirty days, all the bonds issued by the said The Montour Iron Company, and referred to, and intended to be secured by the said indenture of mortgage, principal and interest, should be taken and considered to have fallen, and become due and payable one year before the date of such notice, and a *scire facias* might then be immediately issued thereon, without any delay or objection whatever, any law, rule, or contract to the contrary notwithstanding.

The bill further charges, that by the said mortgage, it was further provided, that whenever, according to the provisions thereof, it should become the duty of the trustees, for the time

[Bancroft *v.* Ashhurst et al.]

being, to enter upon and take possession of the premises therein described and conveyed, or intended to be, then that the said trustees should immediately, either issue process upon the said indenture of mortgage, and sell the property thereby mortgaged and conveyed, by due course of law, or should enter upon and take possession thereof; or with or without entering upon and taking possession, should sell and dispose of the same, in whole or in part, in such way by public auction, (after having given at least three months' public notice, to be published twice a week in two daily newspapers in the city of Philadelphia, and two daily newspapers in the city of New York,) at any time or times, for any price or prices, on any terms for cash, or on credit, with any conditions or reservations of rents, or subject to any mortgages or securities for the purchase-moneys, or any part or parts thereof, as in the sole and absolute discretion of the trustees for the time being, should appear best for the interest of the holders of the said bonds, issued according to, and intended to be secured by, the said indenture of mortgage.

The bill proceeds to show omissions of payments to a large amount, and the happening of the contingencies, lapse of time, and proper notices, which authorized the trustees to enter and sell, and the complainant alleges himself to be the holder to the amount of $13,000.

The bill further charges that The Montour Iron Company, on the 4th of November, 1850, executed and delivered a mortgage for the same property to Henry Young and James Sheldon, to secure to the holders thereof, bonds to the amount of $184.50, and that the mortgage to Young & Sheldon, was the first incumbrance on said property. That said Henry Young filed a bill in this court, in equity, to July Term, 1859, against the said defendants, setting out the said mortgage; that the bonds secured by the said mortgage are due, and praying this honorable court to decree the sale of the mortgaged premises, for the benefit of the mortgage creditors.

The bill further charges that, on the 19th day of September, 1857, the said company executed to Pierre Chouteau, Jr., a mortgage of the said premises for the sum of $265,000; and, on the 19th day of September, 1857, executed and delivered a certain other mortgage in favor of Henry M. Fuller, for the sum of $477,206.

It also alleges that a large number of judgments had been obtained against the said company in Montour county, which had not been satisfied, and were now liens; also that, heretofore, Mortimer F. Lewis, filed his bill in equity in this court, against the said company, and the said John Ashhurst and Edwin M. Lewis, surviving trustees, alleging that he was the holder of ten of the bonds, secured by the said mortgage to the said Isaac R.

Davis, John Ashhurst, and Edwin M. Lewis; that all the bonds secured by the said mortgage were due, and asking this court to make a decree, ordering and directing the said surviving trustees, to make sale of the mortgaged premises, and that both suits in equity were there pending.

The bill further charges, that the said Ashhurst and Lewis, the surviving trustees, had prepared an advertisement to sell the said mortgaged premises, in three or four months from that time, and proposed to sell the mortgaged premises thereunder; that the said mortgaged premises have cost several hundred thousand dollars; that it is of the utmost importance to all parties interested therein, that the said mortgaged premises should be so sold, as to induce persons who may wish to buy them, to bid with confidence in the title, and to be free from doubts and apprehensions, as to the effect of the sale upon all liens or incumbrances thereon; that serious doubts would arise, under the sale as proposed by the said trustees, whether such a sale would remove or discharge the liens or incumbrances of any of the mortgages or judgments subsequent to the said mortgage to Isaac R. Davis, John Ashhurst, and Edwin M. Lewis; that it would not only be injudicious and inexpedient, but also destructive of the interests of your orator, and of the other bondholders, under the said mortgage to the said Isaac R. Davis, John Ashhurst, and Edwin M. Lewis, to have a sale of the mortgaged premises by the said trustees, under the circumstances and in the manner proposed by them; that the only mode of selling the said premises, by which purchasers could be induced to pay a fair and adequate price therefor, would be by selling them under proceedings by *scire facias*, on the said mortgage, or under some judgment of a competent court, either of law or equity, the effect of a sale under which would be, and be known to be, to remove all liens and incumbrances, subsequent to that under which the premises would be sold, or subsequent to, and including the lien of the first judgment.

The bill concludes with a prayer for an injunction to prevent Messrs. Ashhurst and Lewis from making sale of the said mortgaged premises at public auction, in the manner proposed by them, or in any other manner, except under the decree of a court of competent jurisdiction.

*Bullitt* and *Miller*, for complainant.—It is conceded by complainant that a power of sale is given in the mortgage, and that the contingency has arisen under which they were authorized to sell.

It is also conceded that the mortgage, by its terms, confers upon the trustees the discretionary power, either to proceed by *scire facias* on the mortgage, or to sell at public auction. But

[Bancroft *v.* Ashhurst et al.]

the objections to their proceeding to sell as proposed by them are :

1. That such a sale would not divest the lien of subsequent incumbrances on the mortgaged premises, and therefore a perfect title could not be acquired by the purchasers.

2. That the sale, as proposed, would be made under such circumstances as to deter purchasers from bidding what they would if the sale were made in such manner as clearly to divest the lien of all subsequent incumbrances.

3. That the advertisement proposed to be made is unnecessarily long, and involves an expenditure of over $7000, when an advertisement amply sufficient could be made for less than half that cost to the trust estate.

4. It is clear that the instrument is a mortgage. It is called a deed of trust, but it is clearly established by authority that this is but a mortgage. Coote on Mortgages, 3d ed., 54, 55, note a, and authorities there cited; Ib. 130. It is equally clear, that the subsequent mortgages and judgments are liens upon the property, or rather upon the equity of redemption. This is so plain, we do not cite any authorities.

Subsequent lessees, purchasers, and incumbrancers, have the power to redeem. 2 Spence, Eq. 704; 1 Conroy & Lawson, (Irish Chancery,) 264, 512; 1 Drury & Warren, (Irish Chancery,) 171. If they are not made parties to a bill to foreclose, they are not bound by it, because their interests would otherwise be concluded, without any opportunity to assert or protect them. Story, Eq. Pleading, § 193, and note 2; 3 Johnson, Ch. R. 359; 2 Ves. 518; 3 Id. 215. The decree of foreclosure does not bind them, as also a decree of sale would not. Story, Eq. Pl. § 193; *Robinson* v. *Turner*, 7 English Law & Eq. 139; *Roberts* v. *Mason*, 1 Pow. Mort. 9 a, note by Rand.; *Bell* v. *Twilight*, 22 N. H.; *Lawrence* v. *Farmers L. & T. Company*, 3 Kernan, 200; Hil. on Mort. 59, 118, 123; 2 Fost. R. 500; 10 Barr, 131; 7 Bin. 197; 2 Hals. Ch. 636; 2 Spence, Eq. 104; 2 Ball & Beat. 357; 2 Har. 274; 13 S. & R. 262; 10 Barr, 269; 2 Sug. 37; 2 B. & A. 93; 6 Hill, 67.

5. If a sale is made as proposed, the result must be that the property would be ruinously sacrificed, and the complainant and other bondholders be the sufferers.

*Gerhard,* for respondent, cited Coote on Mort. 124, 126, 127; *Corporation* v. *Wallace*, 3 Rawle, 109.

The opinion of the court was delivered by

THOMPSON, J.,—This is an application for an injunction, to restrain the trustees in a deed of trust, in the nature of a mortgage, from selling the mortgaged premises, under a power con-

[Bancroft *v.* Ashhurst et al.]

tained in the instrument. My brethren sat with me as adsessors, at *Nisi Prius,* on the argument of this motion, and were unanimously of opinion, that it was not a case for injunction, on any of the grounds taken by the plaintiff, and that a sale by the trustees, would pass a good title to the purchaser.

In New Hampshire, the doubts of the validity of such a power, rest upon the construction of a statute of that State. *Bell* v. *Twilight,* 22 New Hampshire Rep.

In New York these powers are received universally, not only as valid, but the usual remedy for enforcing payment of the mortgage-money, and the right of redemption, in favor of subsequent lien creditors, is founded on the provisions of the New York statute, and would not exist without it. In the same State, the notice of sale is prescribed by statute, and must be followed. *Wilson* v. *Troup,* 7 Johns. Ch. 25; 4 Kent's Com. 147; In Virginia, some doubts have been entertained respecting the validity of these powers, when given to the creditor himself. *Chowning* v. *Cox,* 1 Rand. 306; *Taylor* v. *Chowning,* 3 Leigh, 654. But they are fully recognized, even in that State, where, as in the case before us, they are given to disinterested trustees. 1 Rand. 311. In England, the power to sell, inserted in a mortgage, seemed unknown to Lord Eldon. *Roberts* v. *Boyer,* 4 Kent, 146, note c. (1825); but the case of *Croft* v. *Powell,* Comyns, Rep. 603, (1738,) shows that such powers existed in that country before the time of Lord Eldon. The case last mentioned, instead of being an authority against their existence, is an authority the other way, for the only grounds, on which the alleged execution of the power was defeated, *was, that it had not been executed at all,* the mortgagee having sold his mortgage *expressly, subject to the right of redemption.* And it was on the authority of this case, that Mr. Sudgen expressed the doubt about the power to sell, clear of the equity of redemption. Powell on Mort. 14. At page 155, he qualifiedly concedes the point. Writers of authority, and numerous judicial decisions in that country, fully recognize the validity of these powers; they are powers coupled with an interest, and, therefore, irrevocable, and a title under such a power is considered as taking effect, as if the power, and the instrument executing it, had been incorporated in one instrument, and as if the purchaser was in by the first grantor, and not by the grantee or donee of the power. *Marlborough* v. *Godolphin,* 2 Ves. 79; *Hearti* v. *Greenbank,* 1 Id. 306; *Clay* v. *Sharp,* Appendix to Sudg. on Vend. 16; *Carden* v. *Morgan,* (1800,) 344; *Cook* v. *Duckenfield and others,* 2 Atk. 565, 568; *Ex parte Caswell,* 1 Id. 560; *Haul* v. *Carter,* 2 Id. 356; *Southery* v. *Stonehouse,* 2 Ves. 612; Thomas' Coke, 591, 2, note b.; Coote on Mortgages, 130, note and cases there cited; 2 Cruise's Digest, 104,

[Bancroft *v.* Ashhurst et al.]

105; Williamson on Real Property, 355; Story, Eq. § 1027; 4 Kent, Com. 146. Judge Story informs us, "that the inconveniences arising from the practice of foreclosure in England are so great, that it has become a common practice to insert in mortgages, a power of sale upon default of payment." Sec. 1027. Ch. Kent speaks of the vexatious delay which accrues upon foreclosure, and states that it "arises, not only from the difficulty of making all proper persons parties, but chiefly from the power which Chancery assumes, to enlarge the time for redemption on a bill of foreclosure." He adds, "that these powers are found in England to be so convenient, that they are gaining ground very fast upon the mode of foreclosure in Chancery. 4 Kent, Com. 146. The case of *Wortner* v. *Wright*, 2 Sim. 534, is an evidence of the progress of this practice. In that case the mortgagee had lost his mortgage, and was, therefore, compelled to file a bill of foreclosure, instead of selling under the power in the mortgage, and the court decreed that he should pay the subsequent incumbrancers their costs, out of the proceeds of the sale, although not sufficient to pay the debt and interest on the first mortgage. This order could only be justified, on the principle that the loss of the mortgage was his own misfortune, and he had put the subsequent incumbrancers to costs, which would not have been necessary had he acted under the power.. Lord Tenterden, C. J., tells us, that it had been established ever since the time of Lord Coke, that when a power is executed, the person taking under it, takes under him who created the power, and not under him who executes it, and on that principle it was held, that judgments against the person, who held an estate with power to sell, were defeated by the execution of the power. *Doe* v. *Jones*, 10 Barn. & Cress. 459; *Naustall* v. *Nappes*, 3 Simons, 286; *Skeeles* v. *Shearly*, 8 Id. 153. As the title takes effect by virtue of the original deed, it follows, that a purchaser is not affected by the liens or interests derived from the mortgagees, subsequent to the creation of the power, unless protected by statute. *Dolittle* v. *Lewis*, 7 Johns. Ch. 48. Such a sale upon principle, when not controlled by statute, extinguishes all liens and interests, derived by the mortgagor subsequent to the creation of the power. *Eaton* v. *Whiting*, 3 Pick. 492; *Kingsly* v. *Arnes*, 2 Met. 30; *Sutton* v. *Orange*, 6 Id. 484; *Jackson* v. *Duroy*, 10 Johns. 185; *Carson* v. *Blakely*, 6 Missouri Rep. 273; *Dunlap's Estate* v. *Wyncoop*, 13 Johns. Ch. 144; *Wilson* v. *Troup*, 7 Id. 25; affirmed in Court of Errors, Cowen, 195.

It is a mistake to suppose that mere powers, are unknown in Pennsylvania. The case of *Bell* v. *Fisher*, decided in 1791, 1 Yeates, 581, note, shows that they were known and recognized by the courts of this State seventy years ago, and there is

[Bancroft *v.* Ashhurst et al.]

now scarcely a railroad mortgage in the State, that does not contain such a power.

It is a maxim of the law, that the contract of the parties governs and gives the law, " *Conventio vincit et dat legem.*" The parties have made their own contract in this case. It is much more beneficial to them, if the rule be fairly construed, than a resort to the tedious and expensive process of law. They have, by their contract, given their trustees full power to elect the remedy deemed most beneficial to the bondholders, and the trustees have made their election. There is no pretence of unfairness or want of notice. If it brings more than sufficient to pay the first mortgage, they cannot defeat it or impair its contract obligation, any more than the mortgagor himself could. The stream cannot rise higher than its source. The mortgage expressly stipulates that the conveyance by the trustees, under the power to sell, shall vest in the purchaser a " full and absolute title in fee simple, freed and discharged from all trusts whatever," without any obligation on the purchaser to become responsible for the application of the purchase money, or for the propriety or expediency of exercising the power to sell;" the conveyances are made conclusive on these points. We have seen that a power coupled with an interest is irrevocable. Here is an estate granted to disinterested trustees, *in trust to sell*, which is clearly quite as irrevocable as an ordinary power coupled with an interest.

To permit the mortgagor to prevent the exercise of this power, by subsequent grants, or to allow his creditors to defeat by subsequent judgments, would be, in substance, a reservation of the power, and would render the security worthless, so far as its value depended on the power.

On the whole, I see nothing in the case to justify any doubts in regard to the title which the purchaser will take under the power to sell. There is no ground consequently for interfering with the contract of the parties. Nor is it our business or duty to take action in regard to the advertisement. That will be a question properly determinable in the accounts of the trustees, when, if too much has been paid for it, it may be corrected. But I cannot refrain from suggesting that the trust fund would not be likely to be answerable for the expense of a greater number of insertions than are provided for by the terms of the mortgage. There can be no necessity for it of which I can conceive. It can hardly be supposed that a mistake could occur in publishing the advertisement at least twice out of six times in a week.

The motion for a special injuction refused.