# Lightner's Appeal.

1. H. being indebted to a bank in a sum much larger than the value of some stock of the bank he owned, was required to give additional security to keep his paper afloat. It was verbally agreed between the bank and H., that he should transfer his stock in the bank as collateral security for his indebtedness, and a power of attorney was accordingly drawn for that purpose in which H., for value received, irrevocably appointed E., the cashier of the bank, his attorney, to transfer to the bank or other persons his stock aforesaid. E. died before he had executed the power, and the stock still remained upon the books of the company in H.'s name, when H. became a bankrupt, and his assignee in bankruptcy filed a bill to prevent the bank disposing of the stock. *Held*, that the power did not fall by reason of the death of E., the attorney named therein.

2. The power was not only irrevocable by its own terms, but it was so by the legal operation of the agreement which induced it. It was a power coupled with an interest, and the agreement operated as an assignment of the stock in equity which the power was intended to perfect.

3. Where the effect of the contract, *inter partes*, is to give a right of property or interest in the subject-matter itself, of the agreement, to the party for whose benefit the execution of the power is intended, the power follows the estate or interest thus agreed to be transferred and becomes irrevocable by operation of law.

June 9th 1876. Before AGNEW, C. J., MERCUR, GORDON, PAXSON and WOODWARD, JJ. SHARSWOOD and WILLIAMS, JJ., absent.

Appeal from the decree of the Court of Common Pleas of *Lancaster county*, in equity: Of May Term 1876, No. 90.

This was a bill in equity filed by Joel L. Lightner, assignee of the estate of Frank J. Herr, bankrupt, against the First National Bank of Strasburg, and Joseph McClure, president, and Rudolph F. Rauch, cashier.

[Lightner's Appeal.]

The bill set forth substantially, that on the 9th of June 1875, Frank J. Herr was adjudged a bankrupt, and on the 12th of August following, Joel L. Lightner was duly appointed assignee of his estate; that the said Herr at the time of the assignment was the owner of sixty-three shares of the capital stock of the First National Bank of Strasburg, and as such owner had drawn the dividends thereon to the time of the commencement of the proceedings in bankruptcy; that by these proceedings the title to this stock was vested in the assignee; that said bank claimed to hold said stock by virtue of an alleged transfer as collateral security for an indebtedness of said bankrupt to the bank, and in pursuance of said claim, the directors of said bank had directed the stock to be sold; that it is denied that said bank is entitled to said stock or that it has ever been transferred to the bank, or that it had any interest therein, and that it is the duty of said assignee to sell said stock for the benefit of the estate of the bankrupt, and he therefore prays the court to grant an injunction to restrain the bank from selling and transferring the stock and for an order to permit the assignee to transfer the same.

The answer of defendants admitted the proceedings in bankruptcy and their regularity; that Frank J. Herr had been the owner of the stock and drawn the dividends thereon, but claimed that the bank had been the beneficial owner of said stock as security for the indebtedness of said Herr by virtue of an irrevocable power of attorney executed by said Herr to E. M. Eberman, cashier, in trust for said bank, and that this indebtedness, which far exceeded the value of the stock, was then due and unpaid. The answer also admitted that the board of directors of the bank had by resolution directed a sale of the stock.

The power of attorney was as follows:—

"Know all men by these presents, that I, the undersigned, for value received, do hereby irrevocably constitute and appoint E. M. Eberman to be my true and lawful attorney, for me and in my name and behalf, to sell, assign and transfer unto the First National Bank of Strasburg, or any other person or persons, sixty-three shares of the capital stock of the First National Bank of Strasburg.

And further, one or more persons under him to substitute with like power.

In witness whereof, I have hereunto set my hand and seal, this first day of October 1873.

Witnesses present:             FRANK J. HERR. [SEAL.]
  H. A. MOWERY,
  GEO. W. HENSEL, JR."

Before an examiner appointed to take testimony, it was admitted that the power of attorney was delivered to the bank, and had been

in its custody ever since; that no transfer of the stock had been made on the books of the company, and that it still remained in the name of Frank J. Herr; also that E. M. Eberman, the attorney named in the power, died early in December 1874.

There was also evidence that Herr was indebted to the bank in an amount larger than the value of the stock, which indebtedness was incurred before the making of the power, and still remained unpaid. Further, that the bank had no claim on this stock, except by virtue of this power of attorney.

The case was heard on bill, answer and depositions, in the court below, and after argument the court, without delivering an opinion, refused the injunction and dismissed the bill.

The plaintiff appealed, and assigned this decree of the court for error.

When the cause came on for hearing in the Supreme Court, in May, this court appointed Robert M. Agnew, Esq., master, to take further testimony and report; and his report, filed before the expiration of the May Term, was in effect as follows:—

" That, on the 1st of October 1873, Frank J. Herr was indebted to the First National Bank in a sum exceeding $10,000, still due and unpaid; that at that time he was a director of said bank; that his indebtedness was discussed at a meeting of the directors, and at their suggestion, to secure the bank, the power of attorney was executed by Herr to E. M. Eberman; that the special purpose or use intended by this power of attorney does not appear in its form, certainly is not definitely disclosed, but in the light of the testimony adduced, it is clear in the opinion of the master that it was given by Herr to Eberman in trust for the bank, to be executed by him in trust for its benefit as collateral security for the payment of Herr's indebtedness to the bank, Herr himself testifying that he ' had no dealings with Eberman in any other relation than as cashier of the bank.' "

The master further reported "that the power was never executed by Eberman, who died early in December 1874, and who deposited this power, with other valuable papers, in the vault of the bank, and neglected to execute the power, and that no transfer of the stock was made on the books of the bank, where it still remained in the name of Frank J. Herr."

No exceptions were taken to this report of the master by either party to the action.

*D. G. Eshleman*, for appellant.—The allegations in the answer are not supported by the testimony, which shows there was no transfer of the stock on the books of the bank by virtue of the power; that the power was not to Eberman in trust for the bank, but only a naked power to sell to the bank or any other persons, and that the bank had no other claim upon the stock than by virtue of

[Lightner's Appeal.]

this power, which was revoked by the death of Eberman: Story on Agency, sect. 488. This power of attorney was not an equitable assignment of the stock to the bank : Notes to Ryall *v.* Rowles, 2 Leading Cases Equity 233, 1st ed. ; Bispham's Equity 77 ; Id. 174 ; Beans *v.* Bullitt, 7 P. F. Smith 221 ; Hunt *v.* Rousmanier, 8 Wheat. 174.

*George M. Kline* and *W. U. Hensel*, for appellees.—The power of attorney was an equitable assignment of the stock, notwithstanding the failure of the attorney to transfer in his lifetime. Where an assignment or pledge appears to have been intended, the intention will not be defeated by reason of the form of the instrument used, and any instrument is sufficient to make a valid assignment whenever the intention to part with the ownership and to vest an interest in the transferee are apparent : Bispham's Equity 174 ; Nesmith *v.* Drum, 8 W. & S. 10 ; People *v.* Tioga, 19 Wend. 74 ; Hartley & Minor's Appeal, 3 P. F. Smith 212. The power of attorney being coupled with an interest, was not revocable by the non-exercise of the power, or by the assignment of the donor : Hunt *v.* Rousmanier, 8 Wheat. 201 ; Blackstone *v.* Buttermore, 3 P. F. Smith 267 ; Bancroft *v.* Ashhurst *et al.*, 2 Grant 513 ; Smyth *v.* Craig, 3 W. & S. 20.

Mr. Chief Justice AGNEW delivered the opinion of the court, October 10th 1876.

From the report of the master it appears that Frank J. Herr, being indebted to the First National Bank of Strasburg in a sum much larger than the value of his stock in the bank, was required to give additional security to keep his paper afloat. It was agreed between the bank and Herr that he should transfer sixty-three shares of stock in the bank as a collateral security for his indebtedness; and Mr. Eberman, the cashier, was instructed by the bank to have a power of attorney drawn up and executed by Herr for this purpose. A power was drawn, in which Herr, for value received, irrevocably constituted and appointed Eberman his true and lawful attorney, for him and in his name and behalf, to sell, assign and transfer to the bank or any other person sixty-three shares of the stock of the bank, with power to appoint a substitute. Eberman, the attorney, having died, the question is whether the power given under these circumstances has fallen. We think it has not. It was not only by its own terms irrevocable for value received, but it was so by the legal operation of the agreement which induced it. It is a power coupled with an interest, and was made and executed for the very purpose of carrying the agreement into performance. When a power of attorney is thus adopted by the parties, as the means of carrying out their valid agreement made upon sufficient consideration, its operation must be sustained upon the nature and purpose of the contract to which it is ancillary and which it

[Lightner's Appeal.]

is intended to effectuate. If the effect of the contract, *inter partes*, is, as here, to give a right of property or interest in the subject-matter itself of the agreement, to the party for whose benefit the execution of the power is intended, the power follows the estate or interest thus agreed to be transferred, and becomes irrevocable by operation of law. A court of equity will not suffer the main purpose or intent to fall, even though a minor purpose may fail. Thus the power to transfer the stock will stand, though the minor purpose, that the transfer should be made by a particular person, fails by his death. The owner of the stock having, on a sufficient consideration, parted with his stock in equity, has no special interest that his power to carry out his sale should be executed by the person named in the power, who will not be his trustee of the proceeds, as he would be if the stock were not equitably transferred. Here the main intent was the security of the bank by means of the ownership of the stock, with the right to apply it to Herr's indebtedness. The intent that this should be done through Eberman, who was the known agent of the bank, was but a minor one; and was really for the benefit of the bank. The act of transfer could be done as well by any other person, for the bank being the depository of the stock, is the only one who could object; and she, of course, would not object to a transfer to herself to carry out the agreement. The bank is clearly the party in interest. She was not bound to carry Herr's debt longer than the tenor of the paper then running called for, and she stipulated for the security of the stock as the consideration of permitting Herr's paper to keep afloat. Herr having agreed to this, his power was but the contract instrumentality to carry out the stipulation. The agreement operated as an assignment of the stock in equity, which the power was intended to perfect. We see no difficulty, therefore, in supporting the contract and power of attorney against the assignee in bankruptcy, there being no allegation of any fraud upon the bankrupt law being perpetrated. The assignee in bankruptcy rests his claim solely upon the supposed failure of the power by reason of the death of the attorney. But in such a case *actus Dei nemini facit injuriam*. The property being personal, the agreement meets no barrier in the Statute of Frauds by reason of its being by parol. There is nothing to prevent a court of equity from compelling specific performance, if it be refused.

This subject was very thoroughly examined and discussed by Chief Justice Marshall, in the case of Hunt v. Rousmanier, 8 Wheat. 174. We may add Hartley & Minor's Appeal, 3 P. F. Smith 212; Blackstone v. Buttermore, Id. 266; Smyth v. Craig, 3 W. & S. 20; Bancroft v. Ashhurst, 2 Grant 513; Bank of Commerce's Appeal, 23 P. F. Smith 59.

The decree of the Common Pleas dismissing the bill is affirmed, and it is ordered that the appellant pay the costs.