# Fett's Estate.

*Equitable assignment—Certificate of deposit—Husband and wife—Decedents' estates—Banks and banking.*

1. An equitable assignment is an agreement in the nature of a declaration of trust, which a chancellor, though deaf to the prayer of a volunteer, never hesitates to execute when it has been made on valuable, or even good consideration.  An assignment of a chose in action or of a fund need not be by any particular form of words or particular form of instrument.

2. A trust company issued a certificate of deposit payable one year after date, bearing interest, in which it was recited that the depositor had deposited a stated sum of money, and that "the above deposit is not subject to check, and is transferable only on the books of the company on the return of this certificate." The depositor owed his wife the exact sum stated in the certificate, being the proceeds of land which he had sold for her. After the depositor's death, his widow, who was one of his executors, presented the certificate on the day it became due, and received a new certificate in which it was recited that she, one of the executors of the decedent, had deposited the same sum of money as the amount of the old certificate, payable one year afterwards to herself on return of the certificate. She indorsed the certificate in her own name as one of the executors. In each of the five succeeding years she returned the certificate delivered to her in the preceding year, and received a new one in the same form. On the certificates after the first one, she simply indorsed them with her own name, excepting in one instance. A witness testified that at the time the old certificate was surrendered, the widow directed the officer of the trust company "to fix it in her name," and gave to him as a reason, "so that she could get it." This witness was an executor of the widow, and did not include the last certificate in the inventory of her estate. *Held* (1), that the widow had a right, as against legatees, to appropriate all of the assets to satisfy the debt due to her; (2) that the written and oral proof was sufficient to sustain a finding that she had made such appropriation, and (3) that the transaction taken as a whole constituted an equitable assignment from the widow as executor to herself personally of the fund represented by the certificate.

Argued Nov. 10, 1908. Appeal, No. 68, Oct. T., 1908, by Jacob G. Fett, Administrator d. b. n. c. t. a. of Henry F. Fett, deceased, from decree of O. C. Berks Co., Oct. T., 1907, No. 20, dismissing exceptions to adjudication in Estate of Margarette Fett, deceased. Before RICE, P. J., PORTER, HENDERSON, MORRISON, ORLADY, HEAD and BEAVER, JJ. Affirmed.

Exceptions to adjudication. Before BLAND, P. J.
The facts are stated in the opinion of the Superior Court.

*Errors assigned* were in dismissing exceptions to adjudication.

*Joseph R. Dickson*, with him *Henry P. Keiser*, for appellant.— Upon its face, the certificate of deposit earmarks the fund represented by it as belonging to the estate of Henry F. Fett,

deceased, and is payable to Margarette Fett, one of the executors: Wilks v. Groom, 25 Law J. ch. 724; Bank of Northern Liberties v. Jones, 42 Pa. 536.

The depositor is clearly designated as Margarette, executrix, and "The depositor is presumed to be the real owner of the funds standing in his name:" First National Bank v. Mason, 95 Pa. 113; Egbert v. Payne, 99 Pa. 239; Citizens' Nat. Bank v. Alexander, 120 Pa. 476; therefore, presumptively at least, Margarette, executrix, is the owner of the fund.

The evidence submitted was inadmissible to vary the terms of the written contract and entirely insufficient to overcome the presumption of ownership in the estate of Henry F. Fett, arising from the certificate itself: Gillespie v. Iseman, 210 Pa. 1; Ry. Co. v. Henrice, 92 Pa. 431; Com. v. McAlister, 28 Pa. 480; Highlands v. R. R. Co., 209 Pa. 286.

A creditor's rights ordinarily are superior to those of a beneficiary under a will, but if the creditor permits his rights to be lost by reason of the statute of limitations, the right of the beneficiary becomes the superior. And if we concede that she was a creditor, she did not assert her right within the requisite period of time and her claim is now barred by the statute: Gracie's Estate, 158 Pa. 521; Marsteller v. Marsteller, 93 Pa. 350.

*E. H. Deysher*, for appellee.—The evidence in the case clearly establishes, and the court has found as a fact, that Margarette Fett was possessed of a separate estate amounting to $1,242.50, which was invested by her in real estate, and of this amount, at least $850 was paid to her husband or to her brother by his direction. It follows from this that Henry F. Fett, in 1878, became indebted to Margarette, his wife, in the sum of $850, loaned to him: Young's Estate, 65 Pa. 101; Grabill v. Moyer, 45 Pa. 530; Wormley's Estate, 137 Pa. 101; Hamill's App., 88 Pa. 363.

At the time of his death, Henry F. Fett held a certificate of deposit in the Pennsylvania Trust Company for $850 which the court finds the executrix appropriated on account of her claim against her husband's estate; that she had the right to

do this is clearly established by the decisions of the courts of this state: Ex parte Meason, 5 Binney, 167.

The question is not the right of a creditor to question the deposit, but one of appropriation by Margarette Fett, and that can only be determined by her words and actions: Bank v. Mason, 95 Pa. 113; Citizens' Nat. Bank v. Alexander, 120 Pa. 476; Nesmith v. Drum, 8 W. & S. 9; Watson v. Bagaley, 12 Pa. 164; East Lewisburg Lumber & Mfg. Co. v. Marsh, 91 Pa. 96.

That Sarah Frock was a competent witness, is clearly sustained by the case of Dickson et al. v. McGraw, 151 Pa. 98; see also Brose's Est., 155 Pa. 619; Rine v. Hall, 187 Pa. 264.

OPINION BY RICE, P. J., April 19, 1909:

Henry F. Fett, at his death in October 1900, was the holder of a certificate of deposit of which the following is a copy:

"THE PENNSYLVANIA TRUST COMPANY
          "READING, PENNA., April 10, 1900.

"Henry F. Fett has deposited with this company, Eight hundred fifty dollars, payable April 10, 1901, to himself, on return of this certificate, in current funds, with interest at the rate of three per cent. per annum. The above deposit is not subject to check and is transferable only on the books of the company, on return of this certificate. Interest to cease at maturity.

                          "D. W. STEHMAN,
                                  "Treasurer."

This certificate was not inventoried as part of his estate. When, in April, 1901, the money became due and payable, Margarette Fett, one of his executors, presented the certificate at the office of the trust company, and, having surrendered it, received a new certificate, issued in the name of the company and signed by its assistant treasurer, which reads as follows:

                "READING, PENNA., April 10, 1901.

"Margaret Fett, one of the executors of Henry F. Fett Estate, has deposited with this Company, Eight hundred fifty and 00 dollars, payable April 10, 1902, to herself, on return of

this certificate, in Current Funds, with interest, at the rate of three per cent per annum. The above deposit is not subject to check, and is transferable only on the books of the Company, on return of this certificate."

In each of the five succeeding years she surrendered the certificate delivered to her in the preceding year and received a new one, in the same form, except that in one instance the word "her" was used instead of the word "herself." On the surrender of the certificate issued to Henry F. Fett she endorsed on it, "Mrs. Margarette Fett, one of the executors of Henry F. Fett, deceased," but on the surrender of all the other certificates excepting one, she simply endorsed them "Margarette Fett."

The evidence abundantly sustains the court's finding of fact that at the time of his death Henry F. Fett was indebted to his wife, Margarette Fett, for the purchase money, $850, which he received upon the sale of her real estate. As one of the executors under his will, she had a right, as against legatees, to appropriate out of the assets sufficient to satisfy the debt due to her. The question is whether she did so. This must be determined as of the date when she surrendered the certificate issued to Henry F. Fett and took a new one payable to herself. If she did not appropriate or assign the fund to herself at that time, there is no warrant for holding that she did so afterwards, and, on the other hand, if she did appropriate or assign the fund to herself at that time, it is quite clear that it did not revert to the estate, by reason of anything that she did afterwards. The form of and the endorsements on the later certificates, in other words, the subsequent dealings between Margarette Fett and the trust company relating to the same fund, are proper for consideration as evidence of their interpretation of the original transaction between them, but they are insufficient to support a finding that any subsequent change in the ownership of the fund was made or intended.

Observe then the nature of the transaction as indicated by the paper itself construed in the light of the situation of the parties and the attendant circumstances, but apart from the testimony of Sarah Frock to which we shall hereafter refer:

The parties were dealing with a chose in action, the legal title to which was in Henry F. Fett, originally, and which Margarette Fett had a right as executrix to assign to herself personally. Instead of drawing the money, as she might have done, and depositing it again in her own name and right, she surrendered the old certificate and took a new one. It is to be implied from this act and the form of the new certificate that she claimed the money due under the old certificate in her right as executrix, and, perhaps, although this is not so clear, renewed the deposit of it in the trust company in the same right. But there is an equally strong implication that it was made payable to "herself" by her direction. Whom then did she mean by that word? It is argued that by the rules of grammar the pronoun "herself" stands for an antecedent and that the only antecedent is the substantive "Margarette Fett, one of the executors of Henry F. Fett, deceased." Rules of grammar have their part in the construction of writings, but they do not control where the effect would be to defeat the actual intent discoverable by applying settled rules of construction to the instrument as a whole. Moreover, no rule of grammar would be violated if the instrument were to be construed as if "Margarette Fett" had been inserted where the word "herself" appears. It is argued further that to read the certificate as being payable to herself individually, would be to construe the writing into an undertaking which would be unlawful. This argument has already been met. Although the general rule is that the depositor is presumed to be the real owner of the fund standing in his name, yet that presumption does not prevail in equity where in the certificate of deposit delivered to him the depositee undertakes to pay to another designated person. Viewing the paper in the light of the situation of the parties, and of the well established fact that Henry F. Fett owed a debt to Margarette Fett equal to the amount of the deposit, and keeping in mind her right to assign the fund to herself in discharge of that debt—creditors or persons having superior equities not being prejudiced thereby—there is strong reason for concluding that an assignment to herself individually was intended.

The foregoing conclusion is strengthened by the testimony of

Sarah Frock who was present when the old certificate was surrendered and the new certificate was taken. Her testimony was to the effect that Margarette Fett directed the officer of the trust company "to fix it in her name," and gave to him as a reason, "so that she could get it." The fact that Sarah Frock was one of the executors of the will of Margarette Fett, who died after the last certificate issued, did not include it in the inventory of her estate, was a pertinent fact to be considered by the auditing judge in connection with her explanation in determining as to her credibility, but it had not the legal effect of destroying her testimony. We cannot say that the court ought not to have credited her testimony.

No particular form of words is necessary to make a valid assignment of a chose in action: "An equitable assignment is an agreement in the nature of a declaration of trust, which a chancellor, though deaf to the prayer of a volunteer, never hesitates to execute when it has been made on valuable, or even good consideration:" Nesmith v. Drum, 8 W. & S. 9. "An assignment of a chose in action or of a fund need not be by any particular form of words or particular form of instrument:" Watson v. Bagaley, 12 Pa. 164. "The form is immaterial, so that there be a clearly expressed intention of an immediate transfer of the right to the assignee:" Ruple v. Bindley, 91 Pa. 296; East Lewisburg Lumber etc., Co. v. Marsh, 91 Pa. 96; Moeser v. Schneider, 158 Pa. 412. These general principles are illustrated in the above cases as well as in other cases cited by Mr. Bispham in his valuable chapter on the subject: Bispham, Principles of Eq. (7th ed.), sec. 167. Amongst others he cites Lightner's Appeal, 82 Pa. 301, where it was held that a parol agreement to transfer stock as collateral security, followed by the execution of a power of attorney to transfer the same, amounted to an assignment of the stock in equity, although the holder of the power of attorney died before he actually transferred the stock. Another pertinent case is Taylor's Estate, 154 Pa. 183, where it was held that a check for the whole amount of a deposit in bank will operate as an equitable assignment of the fund if it was intended to have that effect. It will be observed upon a perusal of that case, that it was necessary,

and was deemed competent to resort to parol testimony as to what occurred when the check was delivered, in order to ascertain the intent of the drawer. We quote from the opinion of Judge ASHMAN, the auditing judge: "The decedent's check was not drawn upon a general fund nor meant to withdraw therefrom a sum of money which was not earmarked; on the contrary it covered the whole fund, and was meant as a specific transfer of that fund. The testator's language was that 'He wanted to give his stepmother $650 which he had in bank;' and the check was suggested to him as the readiest instrument by which the gift could be effected. It is impossible to doubt, from what he said and did, that he intended to assign his title to the fund, then and there; and there is little room to doubt that if he had made a formal assignment, his interest would have passed. But the delivery of the check worked the same result, because it had the same purpose. 'Whenever the party has the power to do a thing (statutory provisions being out of the way) and means to do it, the instrument he employs shall be so construed as to give effect to his intention: Bond v. Bunting, 78 Pa. 210.'" Upon appeal, the Supreme Court said in affirming the judgment: "The check was drawn upon the bank for the full amount on deposit, under circumstances which showed that it was intended as an assignment of the fund. It did not come within the principle of that class of cases which holds that a check drawn in the ordinary form vests no title to the general funds of the drawer in the bank upon which it is drawn. It more nearly resembles Hemphill v. Yerkes, 132 Pa. 545."

The transaction in question was partly in parol and partly in writing. The parol testimony in this case, as well as in several of the other cases cited, was as to what took place at the very time. It did not contradict anything expressed in the writing, or anything necessarily implied from what was written, but was in perfect harmony with it. If the writing alone does not, certainly the writing construed in the light of the pertinent facts above referred to, and of the acts and declarations of the parties at the time it was executed, fully warrant the conclusion at which the learned judge below arrived.

We have not undertaken to discuss the several assignments

of error in detail, but only to suggest those matters that seem to us to sufficiently answer them.

All of the assignments of error are overruled and the decree is affirmed at the costs of the appellant.