# THE SUPREME COURT

72 13
132 553

OF

# PENNSYLVANIA.

MIDDLE DISTRICT—HARRISBURG 1872.

## First National Bank of Mount Joy *versus* Gish's Assignees.

1. By arrangement with a bank and with the knowledge of S., a note for $6000, at sixty days, drawn by B. in favor of S. and endorsed by him, was discounted for B. on condition that $1000 should remain to be paid on the note when due. About the time of the discount B. gave his check for $1000 to the cashier; it was not charged to his account. Shortly after B. made an assignment and was subsequently adjudged a bankrupt. *Held*, that the transaction reduced the liability of S. to $5000, as if the note had been given for that sum.

2. The transaction was not obnoxious to the bankrupt laws, as preferring an antecedent debt.

3. It was not a fraud of the usury laws of Pennsylvania, the penalty being only of the excess of interest.

4. It was not in fraud of the National Bank law, the penalty for usurious contracts being a forfeiture of the interest only.

5. B. drew a check on the bank before his assignment, which was not presented until after: *Held*, not to be an appropriation to the payee; the amount remaining in bank passed to B.'s assignees.

May 9th 1872. Before THOMPSON, C. J., READ, AGNEW, SHARSWOOD and WILLIAMS, JJ.

Error to the Court of Common Pleas of *Lancaster county*: Of May Term 1872, No. 59.

This was an action of assumpsit commenced May 14th 1870, by W. A. Wilson and John C. Gingrich, assignees in bankruptcy of John B. Gish, against The First National Bank of Mount Joy, to recover the sum of $1260, which was on deposit with defendant to the credit of John B. Gish, when he became bankrupt.

The facts were undisputed and are these :—

(13)

[First National Bank of Mount Joy v. Gish.]

Shortly before March 23d 1869, John B. Gish wrote to Andrew Gerber, the defendant's cashier, inquiring whether the bank would discount for him a note for $6000, with the endorsement of John S. Gish.

The cashier informed him by letter that the note would be discounted if he would let $1000 of the proceeds remain in the bank to be appropriated to the note when it became due at the end of sixty days; this letter was shown to John S. Gish. The note, dated March 23d 1869, was then drawn to John S. Gish as payee, endorsed by him, discounted by the defendant, and the proceeds, $5936, passed to the credit of John S. Gish. On the 26th of March, John S. Gish drew his check for $5936, in favor of John B. Gish; of this check he received all but $2500.32, which were passed to his credit on the books of the bank. In pursuance of the arrangement with the bank in relation to discounting his note, he on the same day drew a check as follows:—

"Mount Joy, March 26th 1869.
First National Bank of Mount Joy:

Pay to Andrew Gerber, Cashier, on account of my note discounted in bank, or bearer, one thousand dollars.

JOHN B. GISH."

The check was delivered to the cashier, but was not charged to John B. Gish's account, and still remained in the bank. On the 27th of March 1869, John B. Gish drew a check on the defendant in favor of Jacob Overholzer or order for $260. Up to the 3d of April 1869, John B. Gish had drawn from the bank all the proceeds of the note except $1260. On that day he made an assignment for the benefit of his creditors to Philip Oldweiler. The check to Overholzer having become the property of Samuel Ely, was presented for payment on the 5th of April, and payment refused. On the 28th of April 1869, proceedings in bankruptcy were commenced against John B. Gish; on the 5th of May he was adjudged a bankrupt, and the plaintiffs appointed his assignees. John B. Gish was insolvent when the note was drawn.

On the 7th of December 1871, on the application of John S. Gish and Samuel Ely, the court allowed them to intervene as defendants.

The court, Hayes, J., charged:—

* * * "The bankrupt law is essentially a law of equality; a law of equal distribution of the bankrupt's effects among all his creditors without preference to any. And any device or scheme to defeat such a distribution, within four months previous to the bankruptcy, is void.

"[With respect to the arrangement proposed by Andrew Gerber, and agreed to by John B. Gish, to which John S. Gish was privy, as his son showed Mr. Gerber's letter to him when he endorsed the paper, I am of opinion that it was a viola-

[First National Bank of Mount Joy v. Gish.]

tion of the law of the state, as well as the bankrupt law, and the Act of Congress relative to the National Banks; that it was in fraud of the law, and that John S. Gish would be precluded thereby from any preference as to the one thousand dollars; the bank does not claim it, and there is no evidence that John S. Gish has demanded it of the bank. We think this sum must be paid over to the assignees of John B. Gish under the bankrupt law, because we are of opinion that the check of John B. Gish to Andrew Gerber, cashier, of the 26th of March 1869, was no appropriation of the $1000 to his father, John S. Gish, and that the said sum remained as a deposit of John B. Gish and his voluntary assignee up to the time of his bankruptcy.]

" [As to the $260, the check for that amount was not presented at the bank for payment until the 5th day of April, when it was refused. On the 3d of April, John B. Gish had made his voluntary assignment to Philip Oldweiler, when, as he said, he knew he was insolvent, and from the very small dividend which his creditors have received, it is manifest he was desperately insolvent. By that assignment all his property passed from him and amongst the rest these $260. His check, therefore, presented not until the 5th of April and then refused, cannot be regarded as an appropriation of this sum; and the consequence is this sum also remained still the property of John B. Gish until his assignment, and then vested in his assignee, and subsequently passed to the assignees in bankruptcy.]

" [Then, as there was no appropriation of these sums, they belong to the plaintiffs, who are the assignees in bankruptcy of John B. Gish, for the general benefit of all his creditors, equally and without preference, and the verdict of the jury should be for the plaintiffs for the whole amount.]"

The verdict was for the plaintiffs for $1479.48. The defendants removed the record to the Supreme Court, and in three specifications assigned the charge as included in brackets for error.

*W. W. Brown* (with whom were *G. M. Kline* and *A. Herr Smith*), for plaintiffs in error.—If the contract as to the $1000 were usurious it was valid as to all but the excess of six per cent. interest: Campbell *v.* Sloan, 12 P. F. Smith 481; Act of May 28th 1858, sects. 1, 2, Pamph. L. 622, 1 Br. Purd. 803, pl. 1, 2. The arrangement was not a preference to John S. Gish nor a payment of an antecedent debt, but of a debt then created. The National Bank Act of Congress, June 3d 1864, sect. 30, 2 Br. U. S. Digest 58; where excessive interest is reserved works a forfeiture of the interest only. The delivery of the $1000 check to Gerber was an appropriation of that amount: Greenfield's Estate, 12 Harris 232; Nesmith *v.* Drum, 8 W. & S. 9; Chase *v.* Petroleum Bank, 16 P. F. Smith 169.

[First National Bank of Mount Joy *v.* Gish.]

*W. A. Wilson* (with whom were *S. H. Reynolds* and *D. W. Patterson*), for defendants in error, referred to Act of Assembly of May 28th 1858, and Act of Congress of June 3d 1864, *supra.* The consideration for the discounting the note was illegal, and no obligation could arise on it: 1 Parsons on Contracts 458; Bartlett *v.* Vinor, Carthew 252; Mitchell *v.* Smith, 1 Binn. 118; Seidenbender *v.* Charles, 4 S. & R. 151; Columbia Bank *v.* Haldeman, 7 W. & S. 233. The payment by an insolvent, before maturity, of an endorsed note is a preference to the endorser, and obnoxious to the bankrupt law: Ahl *v.* Thomer, 3 Bankrupt Reg. 29. This transaction was not in the usual course of business, but for the purpose of obtaining usurious interest: Perry *v.* Langley, 1 Bankrupt Reg. 155. The check indicated no fund on which it was drawn, and therefore was no appropriation: Lloyd *v.* McCaffrey, 10 Wright 410; Greenfield's Estate, 12 Harris 232. As soon as the assignment was made the amount to the credit of John B. Gish in the bank became the property of his creditors: Lunt *v.* Bank of N. America, 49 Barbour 227.

The opinion of the court was delivered, May 30th 1872, by

READ, J.—John B. Gish, a grain dealer, doing business at Elizabethtown, Lancaster county, addressed a letter to Andrew Gerber, cashier of the First National Bank of Mount Joy, asking for a discount of a note of six thousand dollars, with John S. Gish, his father, as endorser. The bank agreed to discount the paper offered, if John B. Gish would leave in bank one thousand dollars of it, to be appropriated to the reduction or payment of the note at maturity. The letter of the cashier communicating this to John B. Gish was shown to John S. Gish, and he assented to the arrangement and endorsed a note for six thousand dollars, drawn by John B. Gish to the order of John S. Gish, payable at the First National Bank of Mount Joy sixty days after date. This note was discounted by the bank on the 23d March 1869, and the net proceeds $5936 passed to the credit of John S. Gish, and on the 26th of the same month John B. Gish presented the check of John S. Gish to the bank for that sum, when the same was transferred on the books of the bank to the credit of John B. Gish, who on the same day drew his check on said bank as follows:—

"Mount Joy, March 26th 1869.
First National Bank of Mount Joy

Pay to Andrew Gerber, Cashier, on account of my note discounted, or bearer, one thousand dollars.    JOHN B. GISH."

This check is in the handwriting of Andrew Gerber, the cashier of the bank, and was immediately handed to and retained by him, and still remains in bank.

After paying some indebtedness to the bank and the payment

of several checks drawn by him, there remained in bank the $1000 and $260, on the 3d April 1869, when John B. Gish made a voluntary deed of assignment of his estate for the benefit of his creditors, and on the 28th April 1869, a petition was presented to the District Court of the United States for the Eastern District of Pennsylvania, in pursuance of which he was on the 5th May following, adjudicated an involuntary bankrupt, and the plaintiffs were in July following appointed his assignees in bankruptcy, and the voluntary assignee, Philip Oldweiler, by the directions of the United States court, assigned and transferred to them all the estate of the said bankrupt, which had vested in him by virtue of the voluntary assignment of the 3d of April.

On the 27th March 1869, John B. Gish drew a check in favor of Jacob Overholzer for $260, who transferred it to Samuel Eby, who presented it at the bank for payment on the 5th April 1869, when payment was refused. The plaintiffs claim these two sums of $1000 and $260.

With regard to the first sum, the court were of opinion that the arrangement proposed by Andrew Gerber and agreed to by John B. Gish, and to which John S. Gish was privy, "was a violation of the law of the state as well as the bankrupt law, and the Act of Congress relative to the national banks; that it was in fraud on the law, and that John S. Gish would be precluded thereby from any preference, as to the one thousand dollars."

Our Act of 25th May 1858, was clearly not violated, for it permits the contract for and payment of more than six per cent., which the borrower or debtor alone can reduce to the lawful rate of interest. The 30th section of the Act of Congress of 3d June 1864, establishing a system of national banks, forfeits only the interest, but does not affect the principal; neither of these laws therefore support the opinion of the learned judge.

Nor is the case covered by the 35th section of the Bankrupt Act of 2d March 1867, rendering "the giving a preference to any creditor or person having a claim against him or who is under any liability for him," by any of the means pointed out in the section, and the means employed void.

There was clearly no antecedent debt or liability. It was all one transaction, the effect of which was to reduce the original liability of John S. Gish to five thousand dollars, as clearly as if the note had been drawn for that sum only.

This disposes of the claim for the one thousand dollars; but the learned judge was right as to the check for $260, presented two days after the general assignment, and which therefore the plaintiffs were entitled to recover.

> Judgment reversed and *venire de novo* awarded, unless the plaintiff remits so much of the verdict as consists of the $1000 with its interest.