# JOS. HEMPHILL ET AL. v. J. P. YERKES ET AL.

APPEAL BY DEFENDANTS FROM THE COURT OF COMMON PLEAS
OF CHESTER COUNTY.

Argued February 11, 1890—Decided February 24, 1890.
[To be reported.]

1. A case stated should be a clear statement of the facts submitted for consideration; and where it is not, but refers for many of the facts relied upon to certain answers and affidavits appended to and made a part of it, it may be quashed on account of the inartificial form in which it is drawn.

2. Money deposited in a bank by one person may be shown to be the property of another, either by the depositor or by his attaching creditors; although, in the absence of any claim by the true owner or his creditors, the bank cannot dispute the right of its depositor, and is bound to honor his check: First N. Bank v. Mason, 95 Pa. 113.

Statement of Facts.

3. A check drawn against the whole of a specific fund, deposited in bank in the name of the drawer, but belonging in equity to the payee, transfers to the payee, upon its delivery to him, the legal title to the deposit, even as against the drawer: Loyd v. McCaffrey, 46 Pa. 410, and First N. Bank v. Gish, 72 Pa. 13, distinguished.

4. When the payee in such a check, in pursuance and execution of a prior parol assignment of the fund, made for a valuable consideration, viz., the payment of a debt, indorses and delivers the check to the assignee, before the service of any attachment at the suit of the payee's creditors, the legal title to the deposit will thereby pass to the indorsee as against such creditors.

Before PAXSON, C. J., GREEN, CLARK, WILLIAMS, MC-COLLUM and MITCHELL, JJ.

No. 151 July Term 1889, Sup. Ct.; court below, No. 120 April Term 1889, C. P.

On March 28, 1889, an amicable action was instituted by agreement between Joseph Hemphill and Thomas S. Butler, assignees, etc., plaintiffs, and Jonathan P. Yerkes, and John Yerkes, defendants, a case being stated for the opinion of the court, in the nature of a special verdict, which after stating the parties proceeded:

" The above-named plaintiffs, having obtained in the said Court of Common Pleas of Chester county on January 30, 1888, a judgment for the sum of $13,955.77 against Jonathan P. Yerkes, one of the above-named defendants, issued on February 7, 1888, an attachment-execution upon said judgment, for the purpose of attaching the sum of $634.14 belonging to the said Jonathan P. Yerkes and deposited in the National Bank of Chester county in the name of R. Jones Monaghan, master, with directions to summon the said bank and said master as garnishees. The said writ of attachment-execution was duly served upon said bank and said master on the day it was issued, viz.: February 7, 1888, and upon the said Jonathan P. Yerkes on March 6, 1888.

" That in answer to the interrogatories filed by plaintiffs in said attachment-execution, No. 8 April Term 1888, the garnishees, the said bank and the said master, filed answers, and affidavits were subsequently filed by John Yerkes and Jonathan P. Yerkes, which said answers and affidavits are to be considered and treated as part of the statement of this case.

"If the court be of opinion, upon the above-stated case, that the plaintiffs are entitled to judgment for the $634.14, deposited by R. Jones Monaghan, master, in the National Bank of Chester County, and attached under the above-stated writ, then judgment to be entered for the plaintiffs for said sum of $634.14 against the said the National Bank of Chester County, garnishee; but if not, then judgment to be entered against said bank, garnishee, in favor of John Yerkes, one of the above-named defendants, for said amount. The costs to follow the judgment, and either party reserving the right to sue out a writ of error therein."

The facts shown by the answers and affidavits appended to the case stated were, briefly, that Mr. R. Jones Monaghan had a deposit in the National Bank of Chester County, to his credit as master in a proceeding in equity, of the sum of $634.14; that all the persons interested in the fund originally in his hands as master had been paid and had signed releases, except Jonathan P. Yerkes, to whom the above balance was due; that about 6 o'clock P. M., on February 7, 1888, Mr. Monaghan drew his check upon the said deposit for the entire amount thereof, to wit, $634.14, and delivered the same to Jonathan P. Yerkes, to whose order it was drawn; that about 7 o'clock P. M., the same evening, Jonathan P. Yerkes indorsed and delivered the check to John Yerkes, in pursuance of a prior parol assignment thereof in payment of an indebtedness, and about 8 o'clock, the same evening, the execution attachment issued by the plaintiffs was served upon the bank and upon Mr. Monaghan.

After argument of the case stated, the court, WADDELL, P. J., filed an opinion, which after stating the facts proceeded:

The deposit in this case was in the name of R. Jones Monaghan, master. The name of Jonathan P. Yerkes does not appear upon the books of the bank. John Yerkes, therefore, claims that the bank was not indebted to Jonathan P. Yerkes, and his creditor cannot be paid through the attachment. It is true that "money, when paid into a bank, ceases altogether to be the money of the principal; it becomes the money of the banker, who is bound to return an equivalent by paying a similar sum to that deposited with him, when he is asked for it."

The money placed in the banker's custody is to all intents and purposes his money, and he can do with it as he pleases. He becomes the debtor of the person who has lent or deposited the money with him. He is accountable as a debtor.

Third persons may, however, have rights over the debt thus created. They may show that the moneys, thus deposited in the name of the depositor, are not his moneys, but belong to other parties, and are subject to the rights and demands of these other parties: Bank of Northern Liberties v. Jones, 42 Pa. 536; First N. Bank v. Mason, 95 Pa. 117. . . . It becomes important, therefore, to ascertain who owned the fund on deposit, at the time the attachment was served on the bank.

Jonathan P. Yerkes was a part owner of the land sold by Mr. Monaghan, under the order of the court. The master held the proceeds of sale for the use of the heirs. The money took the place of the land. He had paid out all the fund, but so much as belonged to Jonathan. On February 7, 1888, he gave him a check on the National Bank of Chester county for his share of the proceeds of sale. This check called for all the fund in that bank to the credit of the drawer, as master. Jonathan P. Yerkes took the check, and executed and delivered to Mr. Monaghan a full release for his share of the proceeds of sale.

The check was thus taken in payment, and constituted an assignment to Jonathan P. Yerkes by Mr. Monaghan of all his interest in the moneys originally deposited by him in the bank. The bank then ceased to be the debtor of Mr. Monaghan, and became the debtor of Jonathan P. Yerkes, and it became responsible to him, unless in the meantime it had paid out the fund, or had incurred responsibilities for it to others, by reason of the apparent ownership: Stair v. York N. Bank, 55 Pa. 368; Nesmith v. Drum, 8 W. & S. 9; Jermyn v. Moffitt, 75 Pa. 399; East Lewisburg L. & M. Co. v. Marsh, 91 Pa. 100. The bank has not paid out the fund, and the only responsibility it may have assumed grows out of the indorsement over of the check in question by Jonathan P. Yerkes to John Yerkes, and the service of the attachment issued by the plaintiffs. What responsibility do these acts impose upon the bank?

The indorsement over of the check did not, of itself, without more, work an equitable assignment or appropriation of the

Opinion of Court below.

fund.   It gave John Yerkes no right of action against the bank,
nor any valid claim to the funds in its hands belonging to Jon-
athan P. Yerkes.   Until a check, drawn in the ordinary form,
is presented and accepted, it vests in the payee no title, legal
or equitable, to the funds of the drawer on deposit with the
drawee: Jordan's App., 10 W. N. 37; Kuhn v. Warren S.
Bank, 20 W. N. 230; s. c. 9 Cent. R. 620; Loyd v. McCaffrey;
46 Pa. 410; First N. Bank v. Gish, 72 Pa. 13.   The effect of
the attachment, however, when served, was to place the attach-
ing creditors in the same relation to the garnishee as that
occupied by the debtor before the attachment was laid.   It was
an equitable assignment of the fund in the hands of the bank
belonging to Jonathan P. Yerkes: Patten v. Wilson, 34 Pa.
300; Reed v. Penrose, 36 Pa. 229; Fessler v. Ellis, 40 Pa. 248;
Kuhn v. Warren S. Bank, supra.

The attachment was served upon the bank on February 7th,
but the check was not presented by John Yerkes for payment
until after this service.   When presented, the attachment had
already worked an assignment of the fund in the hands of the
bank, and, as regards it, the plaintiffs in the attachment were
placed in the position and acquired the rights of Jonathan P.
Yerkes to the fund in its possession.   Thus, we find that the
fund, although appearing upon the books of the bank in the
name of R. Jones Monaghan, was actually the property of Jon-
athan P. Yerkes, and the service of the attachment upon the
bank before it paid out the money, or before any other rights
attached, worked an equitable assignment of the fund in favor
of the attaching creditors.   The bank, therefore, ceased to be
the debtor of R. Jones Monaghan or Jonathan P. Yerkes, and
became the debtor of the attaching creditors of Jonathan P.
Yerkes.

We must, consequently, direct judgment to be entered in
favor of the plaintiffs and against the National Bank of Chester
County for the sum of six hundred and thirty-four dollars and
fourteen cents, as provided by the case stated.

Judgment having been entered as directed, the defendants
took this appeal, specifying that the court erred:

1. In entering judgment against the bank in favor of the
plaintiffs, for the sum of $634.14.

Arguments.

2. In not entering judgment against the bank, and in favor of John Yerkes, for said sum.

*Mr. Alfred P. Reid* and *Mr. R. T. Cornwell*, for the appellants :

1. The attaching creditors have no greater rights than Jonathan P. Yerkes against the bank; if he could not have recovered against the bank, they cannot : Patten v. Wilson, 34 Pa. 299 ; Fessler v. Ellis, 40 Pa. 248. Mr. Monaghan's check gave Jonathan no claim upon, nor right of action against the bank : Saylor v. Bushong, 100 Pa. 27 ; Bank v. Millard, 10 Wall. 152 ; First N. Bank v. Shoemaker, 117 Pa. 94 ; Jordan's App., 10 W. N. 37 ; Kuhn v. Warren S. Bank, 20 W. N. 230. A check in the ordinary form cannot operate as an assignment : Attorney General v. Insurance Co., 71 N. Y. 325 (27 Am. Rep. 55) ; Lunt v. Bank, 49 Barb. 221 ; 2 Lead. Cas. Eq., 1653. The fact that the deposit was in the name of Mr. Monaghan, as master, created no indebtedness on the part of the bank to Jonathan P. Yerkes ; the liability of the bank was to Mr. Monaghan as an individual and in his own right : Morse on Banks and Banking, 30, 292 ; Grier v. Huston, 8 S. & R. 404 ; Kline v. Guthart, 2 P. & W. 490 ; Wilmarth v. Mountford, 8 S. & R. 124 ; Laubach v. Leibert, 87 Pa. 55.

2. In general, the true ownership of money deposited in a bank may be shown to be different from the apparent ownership, and the true owner may by a proper notice stop payment. Whether the bank is liable to the true owner, however, depends upon the circumstances of the case : Stair v. Bank, 55 Pa. 364. In the circumstances of this case, Jonathan P. Yerkes had no claim to the deposit at the time the attachment was served, that would render the bank liable to him or his creditors. When he accepted the check and gave a release, he relinquished all claim to ownership of the fund in bank, treating the check as payment of the debt Mr. Monaghan owed him. Moreover, as by giving a negotiable check Mr. Monaghan assumed personal responsibility to the payee and every subsequent holder, he had a right for his own protection to have the fund in bank thereafter treated wholly as his own property.

3. If any possible claim to the deposit could be conceived as remaining in Jonathan P. Yerkes after his acceptance of the

check, it would be only as collateral security for the payment of the check. Any such claim passed to John Yerkes when the check was transferred to him: Foster v. Fox, 4 W. & S. 92; Cathcart's App., 13 Pa. 416; Brice's App., 95 Pa. 149; Dubois's App., 38 Pa. 231; Morris v. McCulloch, 83 Pa. 34. And the transferee takes free from the equities of creditors as to the collateral, to the same extent that he does as to the negotiable paper itself: Carpenter v. Longan, 16 Wall. 271; Kenicott v. Supervisors, 16 Wall. 469. This check was negotiable: 1 Randolph on Commercial Paper, §§ 2, 8; 3 Idem, § 1045. The reception of it in payment of an antecedent debt constituted John Yerkes a holder for value: Bardsley v. Delp, 88 Pa. 420; Kirkpatrick v. Muirhead, 16 Pa. 123; Rosenberger v. Bitting, 15 Pa. 278: Day v. Zimmerman, 68 Pa. 72; Walker v. Geisse, 4 Wh. 250.

*Mr. William J. Butler, Jr.* (with him *Mr. Windle*), for the appellees:

1. When the bank is a mere stakeholder, as in the present case, it is always admissible for the true owner or an attaching creditor to prove the fact of title to a deposit: First N. Bank v. Mason, 95 Pa. 113; Stair v. Bank, 55 Pa. 364. The answer of Mr. Monaghan is conclusive that the deposit in controversy was the property of Jonathan P. Yerkes; it was his converted real estate. That answer and the answer of the bank, together, established the fact that the bank had in its hands $634.14 belonging to Jonathan P. Yerkes when served with the attachment, and, this being so, judgment was properly entered for the attaching creditors: Kuhn v. Warren S. Bank, 20 W. N. 231.

2. The acceptance of Mr. Monaghan's check, and the execution of a release to him, did not discharge the interest of Jonathan P. Yerkes in the deposit. Whether an accepted check is an absolute payment depends entirely on the intention of the parties, in ascertaining which their relations must be considered. The relation between the drawer and the payee of this check was not that of debtor and creditor, but that of trustee and cestui que trust. The money mentioned in it was the absolute property of the payee, and every presumption is that the check was intended simply to enable him to draw his own money out of the bank, and the release was given merely in anticipation of getting the money.

3. The indorsement of the check to John Yerkes conveyed to him no interest in the deposit. A check is simply an order on the drawee for a payment out of funds of the drawer, and gives the payee no title to the funds held by the drawee: Kuhn v. Warren S. Bank, 20 W. N. 230; Jordan's App., 10 W. N. 37. Jonathan's interest in the deposit could not pass to John as collateral security for the payment of the check; the former's money could have in law no relationship to the rights passing to John by the indorsement. Nor did Jonathan assume by the indorsement any other than a future contingent liability. No mere talk or even understanding between Jonathan and John, prior to the indorsement, that the latter should have this money, amounts to anything; it is enough to know that no assignment of the fund was made.

OPINION, MR. CHIEF JUSTICE PAXSON:

This case stated is very inartificially drawn, and might well be quashed for this reason. Instead of being a clear statement of facts agreed upon, we are referred for many of the facts to the answers of the garnishees, and to certain affidavits which are attached to the case stated, and made a part thereof. As an examination of them enables us to gather the material facts with reasonable certainty, we will dispose of the case as presented.

The fund in controversy was deposited in bank to the credit of R. Jones Monaghan, master. It amounted to $634.14, and was part of a fund which had come into the hands of Mr. Monaghan as master, appointed by the court to make sale of certain real estate under a decree in partition. The fund in bank represented the share of Jonathan P. Yerkes in the proceeds of the sale of said real estate, all of the other heirs having been paid in full. Under these circumstances, the fund in bank, although deposited in the name of Mr. Monaghan as master, was really the money of Yerkes. He was the equitable owner thereof, and entitled to demand the legal title. It was held in First N. Bank v. Mason, 95 Pa. 113, that money deposited in a bank to the credit of A. may be shown to be the property of B. It may be reached by attachment on the part of the judgment creditors of B., or its payment by the bank to A. may be stopped by a proper notice on the part of B. that the money

belongs to him. The credits on the books of the bank are but prima facie evidence of ownership. It is equally well settled, however, that, in the absence of any claim by the real owner, the bank cannot dispute the right of its depositor, and is bound to honor his check.

On February 7, 1888, at or about 6 o'clock p. m., the said Jonathan P. Yerkes called upon Mr. Monaghan at his office, and received from him a check of that date for $634.14, the full amount of the deposit. The check was drawn as master, against a fund standing to Mr. Monaghan's credit as master. It was drawn against a particular fund, and for the whole of it. Yerkes then and there delivered to the master a full release and discharge for the same. All the other parties to the equity suit had previously released him. He was the last party to whom a check was given; all the other parties had been fully paid some months before. This placed the legal as well as the equitable title to the fund in Jonathan P. Yerkes. It is true, as a general principle, that a check drawn in the ordinary form vests no title to the general funds of the drawer in the bank upon which it is drawn: Loyd v. McCaffrey, 46 Pa. 410; First N. Bank v. Gish, 72 Pa. 13. This principle and these cases do not apply. The check was not drawn against the general funds of Monaghan; it was drawn against the whole of a specific fund which in equity belonged to the payee, and, as before observed, passed the legal title to the fund, even as against the drawer. Mr. Monaghan could not have withdrawn or repudiated that check; an attempt to do so would have been a fraud. To have drawn it out and converted it to his own use would have been an embezzlement. This is a test of ownership.

After leaving Mr. Monaghan's office on the evening of February 7th, Jonathan P. Yerkes, on his way home, stopped at the house of his brother, John Yerkes, indorsed the check, and gave it to his brother in payment of a debt which he owed him. This was done in pursuance of a previous parol agreement by which John was to receive Jonathan's share of the money in the hands of the master. It was a parol assignment of the fund, consummated as soon as the check came into Jonathan's hands.

The plaintiffs, having obtained a judgment against Jonathan

P. Yerkes, issued an attachment thereon on the same day that the settlement was made between Mr. Monaghan and the said Jonathan, which attachment was served upon the garnishees about 8 o'clock P. M. At that time there were no funds in the hands of either Mr. Monaghan or the bank, garnishees, belonging to Jonathan P. Yerkes. The attaching creditors could only attach his right; they stood precisely in his shoes. They could take what he could claim; nothing more. It cannot be contended successfully that, as between Jonathan and his brother, John, the former could take this fund. He had made a parol assignment of it for a valuable consideration, and, before any attachment was served, indorsed and transferred the check to his brother, and thus passed to him the legal title. The learned judge below correctly held that the attaching creditors acquired the rights of Jonathan P. Yerkes to the fund. But we have endeavored to show that he had no right to it. All his right passed to his brother by virtue of the parol assignment and the delivery of the check. The error into which the learned judge below fell was in holding that the check gave the payee no valid claim upon the fund, overlooking the fact that this was not the case of an ordinary check drawn against general funds of the drawer, but a check drawn against a special fund, to which the payee held the equitable title.

> The judgment is reversed, and judgment is now entered against the National Bank of Chester County, garnishee, in favor of John Yerkes, one of the above-named defendants, for $634.14, with costs.