## Oldfield's Estate.

*Decedents' estates—Gifts—Money in savings banks—Completion of transfer—Gifts causa mortis.*

A transfer by a decedent, two days prior to his death, of a sum of money in a savings bank, cannot be regarded as a gift causa mortis, where the check drawn on the bank was not for the full amount of the fund, and was not payable until some weeks subsequent to the death of the maker, and the bank book was not surrendered, as was required under the rules of the institution to effect the transfer. In such case the gift cannot be said to have been consummated and, therefore, did not pass title to the fund.

340, (1919).]            Syllabus—Arguments.

*Savings bank account—Equitable assignment—Sufficiency.*

The signing of a check, to take effect at some subsequent date, and without the surrender of the depositor's bank book, which was required by the rules of the bank, was not such a transfer as would constitute an equitable assignment of the amount of the check to the claimant, vesting in her a then present title to that fund, which would have been good against the decedent himself had he been restored to health, or against his creditor who might have attempted to seize it.

Where the money in bank was not an ordinary deposit, subject to payment by check, and could be drawn by the owner only after compliance with certain conditions precedent, such as notice in writing for a prescribed length of time and the surrender of the bankbook, the mere signing of the check was not sufficient to create an equitable assignment of the fund, and the claim must be dismissed for lack of some of the essentials required by the law to support it.

Argued May 2, 1919. Appeal, No. 158, April T., 1919, by Lucy Oldfield, from the decree of O. C. Allegheny Co., September T., 1918, No. 704, dismissing exceptions to adjudication in the estate of Thomas Oldfield, deceased. Before ORLADY, P. J., PORTER, HENDERSON, HEAD, TREXLER, WILLIAMS and KELLER, JJ. Reversed.

Exceptions to adjudication. Before TRIMBLE, J.
The court dismissed the exceptions.

*Error assigned* was the decree of the court.

*John A. Metz,* and with him *Thomas D. Murray,* for appellant.—The delivery of an order, transferring part of a savings account was not a sufficient delivery to support a gift causa mortis: Trough's Est., 75 Pa. 117; Walsh's App., 122 Pa. 187; Foley v. New York Savings Bank, 139 N. Y. Supp. 915; Pfeifer v. Badenhop, 92 Atlantic 273; Provident Inst. for Sav. v. Sisters of the Poor, 100 Atl. 894; White v. Cushing, 88 Me. 339; Luebbe's Est., 179 Pa. 447; Tissue's Est., 64 Pa. Superior Ct. 142; Hawley's Est., 32 C. C. 160; Kearn's Est., 171 Pa. 55; Appeal of Waynesburg College, 111 Pa. 130.

The order on the savings bank did not operate as an equitable assignment: Kennedy's Executors v. Ware, 1 Pa. 445; Scott v. Lauman, 104 Pa. 593; Fett's Est., 39 Pa. Superior Ct. 246; Jermyn v. Moffit, 75 Pa. 402; Vetter v. Meadville, 236 Pa. 567; Tibbey Bros. Glass Co. v. Farmers & Merchants Bank of Sharpsburg, 220 Pa. 1.

*George W. Allen,* for appellee, filed no printed brief.

OPINION BY HEAD, J., July 17, 1919:

The question involved arises in the distribution of the balance shown to be due in the account of the administrator of the estate of Thomas Oldfield, deceased. One Jennie L. Edwards appeared before the auditing judge and claimed the sum of $633.55 which she alleged had been given to her by the decedent in his lifetime. The circumstances surrounding the alleged gift may be thus briefly stated. At and prior to the date of his death the decedent had on deposit in the Germania Savings Bank of Pittsburgh the sum of $634.55. A few weeks before the date of his death he went to the home of the claimant and her husband, with whom he had always been on friendly terms, and remained there until he died. On May the 16th he was told by his physician that his illness was serious and that he could not live long. He then declared to the physician that he had some money in the bank and wanted Mrs. Edwards to have it because she had always been good and kind to him. The physician then wrote for him the following notice to the bank:

"May 16, 1917.

"To the Germania Savings Bank, Pittsburgh, Pa.
"Dear Sir:—

"I want to draw all of my money out, $634.55. Oblige,
"Yours truly,"

This was signed by the decedent and given to the claimant who took it to the bank. One of the employees therein then filled up the customary blank used in such cases, which, among other things, gave the number of the de-

positor's bank book, 40707, and the date of the notice as of May 16th for the withdrawal of $633.55. At the same time, as we understand the facts, she was given a blank check or order which was afterwards filled up by some one and then signed by the decedent. Its contents were these:

"Notice must be given for all amounts in excess of $25.00.

"Pittsburgh, Pa., May 16, 1917.

"Germania Savings Bank,......$633.55 June 13, 1917, ......weeks after date, pay to Jennie L. Edwards or bearer $633.55/100 and charge to my account, deposit book No. 40707.

"Witness:                          "Thomas Oldfield.

"George W. Edwards.

"Bank book will have to come with this order."

The decedent died on May the 18th. As the check or order, by its terms, was not payable until the 13th of June following, it was not presented for payment during the lifetime of the decedent nor afterwards.

Under this state of facts, had the claimant acquired, in the lifetime of the decedent, the title to the sum of money mentioned so that it could be said the gift had been fully executed and could be supported either as a donatio causa mortis or an equitable assignment? The learned court below held that the money was hers and awarded it to her. The decree of distribution being afterwards confirmed by the court in banc, this appeal followed.

It is certain the so-called check or order on the bank was not a negotiable instrument. So much was clearly held in Iron City National Bank v. McCord, 139 Pa. 57. The reason why it was so held was because the check or order in that case, as in this, contained a distinct stipulation that the bank book of the depositor must be presented at the bank with the check or order before any legal obligation to pay could arise. Now it is universally conceded that there is no such thing recognized by the law as an executory gift. This for the simple reason

that a mere promise to make a gift, being unsupported by a valuable consideration, is revocable at the pleasure of the prospective donor. Such a promise would clearly be revoked by operation of law by the death of the promisor. The entire doctrine of the law defining the essential quality of every gift, whether it be the ordinary gift inter vivos or belong to that exceptional class of gifts causa mortis, is thus stated by Mr. Justice WILLIAMS in Walsh's App., 122 Pa. 177. This is a well considered and leading case on the subject. "A gift is more than a purpose to give, however clear and well settled the purpose may be. It is a purpose executed. It may be defined as the voluntary transfer of a chattel completed by the delivery of possession. It is the fact of delivery that converts the unexecuted and revocable purpose into an executed and therefore irrevocable contract. All gifts are necessarily inter vivos, for a living donor and donee are indispensable to a valid donation......In every valid gift a present title must vest in the donee, irrevocable in the ordinary case of a gift inter vivos, revocable only upon the recovery of the donor in gifts mortis causa. ......But if there remains something for the donor to do before the title of the donee is complete, the donor may decline the further performance and resume his own. This is true of both classes of gifts, and there can be no good reason for distinguishing between them in this particular: Scott v. Lauman, 104 Pa. 593."

In the present case we may concede that the intention of the decedent to give this money to the claimant was established by satisfactory proof. But there was still more to be done by him before he could execute his intention. His next necessary step was to give notice of that intention to the savings bank because it was a condition of his deposit that such a sum could not be withdrawn until after notice for a prescribed length of time had been given. This second step was taken and the intention of the decedent thus approached a degree nearer its final execution. Now it seems to be conceded, and

indeed the evidence clearly shows the decedent had in his own possession his bank book. He gave its number to the physician who drew up the informal notice. He learned from it the correct amount of his deposit, $634.55. He knew the money in the bank could not be transferred from him to another, even upon his order, unless the bank book accompanied the order. He did not deliver the bank book to the claimant. We are not permitted to conjecture whether that was a pure oversight on his part or supported by some reason satisfactory to himself. We must deal with the fact that it was not delivered. Because of that fact she could not get the money and the intended gift thus lacked the final but all-necessary step by the decedent to carry it into complete execution.

Gifts causa mortis are exceptions to some of the general rules applicable in such matters because of the unusual conditions under which they are made. It becomes incumbent therefore upon those who distribute the estates of dead men to see that such claims conform in all respects with the requirements of the law that recognizes them. The sufficiency of what was done by the decedent in this case has been considered by many of the courts and they have uniformly determined that, because of the failure of the depositor to deliver his bank book along with his check or other order upon the bank, the intended gift had not been fully executed and therefore could not be sustained as a gift causa mortis: Foley v. New York Savings Bank, 139 N. Y. Supp. 915; Pfeifer v. Badenhop, Supreme Court of New Jersey, 92 At. Rep. 273; Conser v. Snowden, 54 Md. 175; White v. Cushing, 88 Me. 339.

Nor do we think we could soundly hold that the signing of the order or check on the bank amounted to an equitable assignment of the amount of the check to the claimant; thus vesting in her a then present title to that fund which would have been good against the decedent himself, had he been restored to health, or against his creditors who might have attempted to seize it. It is to be constantly kept in mind that if the claimant acquired

title to the money which has been awarded to her, it was as a donee and not as a creditor. If the gift was made, it was of course without consideration. Now the check or order on the bank which was handed to the claimant, according to its terms, directed the payment of the money to her not presently but on the 16th of the following month. Can it be successfully urged that by the delivery of the paper there was created such a present transfer of the title to the money that thereafter the assignor could not have revoked it? We cannot so conclude. It is also to be remembered that under no circumstances could the claimant have obtained from the bank the full amount standing to the credit of the depositor. If it be said the teller made an error in stating in the notice prepared by him that the amount was one dollar less than it was in fact, nevertheless that was adopted by the decedent in making up the check or order. We may feel sure enough that we interpret his intention truly when we say it was his purpose to give all of it, but we cannot say he executed that intention when he drew and signed the check for a sum less than what was really due and owing by the bank.

In determining whether or not there was an equitable assignment of a fund, important effect has been given to the fact whether the parties dealt with the whole of a particular fund or with only a part of it. We quote the following from the opinion of Mr. Justice MERCUR in Jermyn v. Moffitt, 75 Pa. 399 : "It is true, where an order is drawn for the whole of a particular fund, it amounts to an equitable assignment of that fund, and after notice to the drawee, it binds the fund in his hands. Where, however, the assignment is of a part only of the fund the law seems to be otherwise. Thus, it was said by Mr. Justice STORY, in giving the opinion of the court in Mandeville v. Welch, 5 Wheat. 277, 'when the order is drawn on a general or a particular fund for a part only, it does not amount to an assignment of that part, or give a lien as against the drawee, unless he consent to the appropriation by an acceptance of the draft.' The reasons which

he gives are, that a creditor should not be permitted to split up a single cause of action into many actions, without the assent of his debtor, etc. It was held in Gibson v. Clark, 20 Pick. 15, that the assignment of part of a debt will not bind the debtor, either in equity or at law, nor deprive him of the right to pay the whole to the assignor, after notice that a part has been transferred to the assignee."

As long ago as Nesmith v. Drum, 8 W. & S. 9, the nature of an equitable assignment was thus defined or declared: "An equitable assignment is an agreement in the nature of a declaration of trust, which a chancellor, though deaf to the prayer of a volunteer, never hesitates to execute when it has been made on valuable, or even good consideration." In Hemphill v. Yerkes, 132 Pa. 545, a state of facts was developed which clearly called for the application of the principle. The fund in the bank was a special one deposited in the name of a master who had been appointed by the court to conduct a sale of real estate. The resulting purchase money of course belonged to the owner of the land. In due course of time the master drew a check for the whole of this special deposit to the order of the landowner to whom the money in reality belonged. It was held that there resulted an equitable assignment notwithstanding the general principle that an ordinary check upon a bank does not amount to an assignment of any part of the funds of the maker to the payee. If the principle could not be properly applied in such a case, there would be no reason for its existence at all. So in Fett's Est., 39 Pa. Superior Ct. 246, there was a special deposit made by the decedent of money resulting from the sale of real estate belonging to his wife. The money was therefore clearly hers. As his executrix she had a right, as against legatees under his will, to retain that which was legally and morally hers. The question was, had she done so in the substitution of successive certificates of deposit in lieu of the one which had been delivered to her husband in his lifetime? It was held her

intention had been fully executed and as there was nothing lacking in substance, equity would regard the assignment as a complete one. In Taylor's Est., 154 Pa. 183, the facts were more nearly similar to the case at bar but differed in one or two material considerations. The money in bank was an ordinary deposit subject to check. The intention of the depositor to give that money to a particular person was well established. A check for the whole amount of the fund was drawn, signed by the decedent, duly delivered and presented to the bank for payment in the lifetime of the maker. It was payable on presentation but the bank refused to pay because the signature of the maker, which was by his mark, was not attested by a subscribing witness. No further act on the part of the decedent was required to make the transaction complete and there was no legal obstacle in the way of the payee supplying by proof the genuineness of the signature. The ratio decidendi clearly appears from the following extract from the very brief opinion of the court: "The check was drawn upon the bank for the full amount on deposit, under circumstances which showed that it was intended as an assignment of the fund. It did not come within the principle of that class of cases which holds that a check drawn in the ordinary form vests no title to the general funds of the drawer in the bank upon which it is drawn. It more nearly resembles Hemphill v. Yerkes, 132 Pa. 545."

In the case at bar the claimant was a volunteer. She makes no attempt even to set up the status of a creditor. The money in the bank was not an ordinary deposit subject to payment by check. It could be drawn by the owner only after compliance with certain conditions precedent. Until he had given notice in writing for a prescribed length of time of his intention to withdraw his money, and until he himself or one holding his order to pay presented with it his bank book, no obligation to pay arose. The decedent did give the required notice but it had not yet expired at the time of his death. He did

340, (1919).] Opinion of the Court.

not turn over to the claimant his bank book, without which she acquired no right to enforce his promise. We are of opinion her claim failed for lack of some of the essentials required by the law to support it. As the case, however, is a reasonably close one and strongly called for an adjudication in order to protect the rights of the estate, we think it equitable that the costs of this appeal should be paid out of the fund for distribution.

The decree of the court below is reversed and the record remitted with direction to make distribution in accordance with this opinion, the costs of this appeal to be paid out of the fund.