## Eppinger, Executor, v Allen et al.

*Banks and banking—Checks—Transfer of title—Receivers.*

1. Where a check is drawn not against the general funds of the drawer, but against a special fund to which the payee holds the equitable title, the delivery of the check passes title to the fund.

2. Where funds on deposit in the name of a receiver belong in fact to the depositors and creditors of a defunct bank, a check drawn by the receiver on such funds in favor of a depositor passes the title to the amount of the check.

Issue submitted to the court by stipulation. C. P. No. 2, Phila. Co., March T., 1925, No. 12769.

*Wolf, Block, Schorr & Solis-Cohen,* for plaintiff.

*Leon Sacks,* for J. B. Marget, defendant.

LEWIS, J., Sept. 15, 1927.—The matter now before us by stipulation is a dispute between Harry Spivak, attaching creditor of A. Hofstein, and J. B. Marget, holder of the check given A. Hofstein in payment of his deposit account with the defunct bank. The facts are that a check, payable to Hofstein in the sum of $147.24, was drawn by A. M. Greenfield, receiver, and sent to him. Hofstein, when he received the check, went to Marget and purchased some gold and was given cash for the balance. Marget deposited the check on Oct. 7, 1926, and on Oct. 8th an attachment was served on the receiver, in which Hofstein was named as a defendant; the receiver thereupon stopped payment on the check. From the evidence produced, it is clear that Marget is a *bona fide* holder for value, and, in our opinion, he is entitled to the fund.

The case of Catanzaro & Sons, Inc., v. Hellman Commercial Trust and Savings Bank, 281 Pa. 468, is relied upon by the attaching creditor; Hemphill v. Yerkes, 132 Pa. 545, is called to our attention by counsel for Marget. An examination of these cases shows that the latter is more nearly in point here.

In the Catanzaro case, a consignee sold some goods belonging to his consignor and deposited the proceeds in his own bank account, but sent the consignor five checks covering the amount. After three of the checks had been

endorsed over to the defendant for value, the plaintiff issued and had served a foreign attachment against the consignor, naming the bank and the consignee as garnishees. The defendant pleaded that the fund, represented by the checks and paid into court, "was not and is not the property" of the consignor, and it was on this position taken by defendant that the Supreme Court affirmed the lower court's finding that the attaching creditor's right was superior, saying: "Had the plea averred that the fund was the consignor's, appellant (defendant) might, perhaps, have been entitled to recover the amount of the three checks which were endorsed and delivered to it prior to the attachment, on the theory that they were muniments of title, transferring to the consignor his own property, and their endorsement and delivery to appellants was, in effect, an assignment of that title. We do not decide this point, however, because it is not before us. Appellants chose to aver that the fund belonged to the consignee and based its claim entirely upon the checks, as checks, drawn upon the consignee's general account in the bank. As checks, however, . . . no lien was acquired upon that account, because they had never been certified or accepted."

In Hemphill *v.* Yerkes, 132 Pa. 545, it appeared that one Monaghan had been appointed master to make a sale of certain real estate. He deposited the proceeds in his own name and then drew checks to the various parties in interest. The last check drawn was in favor of one Yerkes, who at once endorsed the check and gave it to his brother in payment of a debt. Very shortly thereafter and before the check was deposited, an attachment was served upon the master and the bank. It was held that the brother of Yerkes was entitled to the fund as against the attaching creditor. The following excerpts from the opinion of Mr. Chief Justice Paxson will indicate the basis of the decision: "The fund in bank represented the share of Jonathon P. Yerkes in the proceeds of the sale of said real estate, all of the other heirs having been paid in full. Under these circumstances, the fund in bank, although deposited in the name of Mr. Monaghan as master, was really the money of Yerkes. He was the equitable owner thereof and entitled to demand the legal title. . . . It is true, as a general principle, that a check drawn in the ordinary form vests no title to the general funds of the drawer in the bank upon which it is drawn: Loyd *v.* McCaffrey, 46 Pa. 410; First National Bank *v.* Gish, 72 Pa. 13. This principle and these cases do not apply. The check was not drawn against the general funds of Monaghan; it was drawn against the whole of a specific fund which in equity belonged to the payee, and, as before observed, passed the legal title to the fund, even as against the drawer. Mr. Monaghan could not have withdrawn or repudiated that check; an attempt to do so would have been a fraud. To have drawn it out and converted it to his own use would have been an embezzlement. This is a test of ownership. . . . The error into which the learned judge below fell was in holding that the check gave the payee no valid claim upon the fund, overlooking the fact that this was not the case of an ordinary check drawn against general funds of the drawer, but a check drawn against a special fund, to which the payee held the equitable title."

The situation here is like that in the Hemphill case, although it is true that emphasis is laid on the fact that the check in the cited case was for the entire balance of the fund in bank and was delivered in pursuance of a prior parol assignment, but these distinguishing factors, while of some importance, are not the entire basis of the decision reached. After the confirmation of the receiver's account here, the funds in the drawee bank, while deposited in the name and subject to the check of the receiver, belonged to the depositors and

other creditors of the Producers and Consumers Bank to the same extent as the fund belonged to Yerkes in the cited case; certainly the equitable title was in them. The check sent to Hofstein was, we believe, as stated by Mr. Justice Simpson, a "muniment of title" transferring to Hofstein his own property, and the endorsement of the check was, in effect, an assignment of that title—such, at least, as should prevail against a subsequent attaching creditor.

It is, therefore, ordered that the fund of $147.24 be paid over to J. B. Marget.